UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| VS. | § |
| | § CRIMINAL NO. H-05-0007-1 |
| DARRELL WAYNE MONROE, JR., | § |
| | § |
| **Defendant.** | § |

### MEMORANDUM AND ORDER

Pending before the Court in this prosecution for possession of a handgun by a convicted felon is Defendant Darrell Wayne Monroe, Jr.'s motion to suppress his written confession. After considering the parties' filings, the oral arguments and evidence presented at the suppression hearing, and the applicable law, the Court finds that the motion, Docket No. 20, should be and hereby is **DENIED**.

### I.   BACKGROUND

At approximately 3:30 a.m. on October 12, 2004, officers of the Houston Police Department ("HPD") executed a "no-knock" search warrant at an apartment located at 10225 Bissonet Street in Houston, Texas. The warrant authorized the officers to search the apartment for codeine, a controlled substance. After breaking open the door with a battering ram, between seven and ten HPD officers entered the apartment with handguns and at least one shotgun drawn. The officers were dressed in HPD raid gear, which consists of black, Special Weapons and Tactics ("SWAT") type uniforms; Kevlar® protective vests; helmets; and, in the cases of at least two officers, Donald DeBlanc and Abraham "Abe" Vanderberry, black face masks known as balaclavas.[1]  Mr. Monroe; his

---

[1] A balaclava is similar to what is commonly known as a "ski mask." It is a woolen mask covering the entire head, exposing only the eyes and nose.

1

girlfriend, LaShandra Brown; and Mr. Monroe's two-year-old daughter were asleep on the couch when the officers entered;[2] Mr. Monroe was wearing only a pair of boxer shorts, and Ms. Brown was wearing nightclothes. Both Mr. Monroe and Ms. Brown admitted at the suppression hearing that they had smoked marijuana earlier that evening.

After securing the apartment and handcuffing both Mr. Monroe and Ms. Brown, the officers searched the apartment and found a handgun on the kitchen counter, 11 grams of marijuana in a butter container on the living room table, and $1,084 in cash under the carpet in the bedroom closet. Officer DeBlanc administered the *Miranda* warning to both Mr. Monroe and Ms. Brown and then led Mr. Monroe to a bedroom for interrogation, while Officer Vanderberry questioned Ms. Brown in the living room.

During his interrogation by Officer DeBlanc, Mr. Monroe, who has a previous felony conviction, waived his Fifth Amendment right against compulsory self-incrimination and orally admitted to owning the handgun. He initialed each of his *Miranda*[3] rights on a written form, thereby indicating that he understood and voluntarily waived each right, and executed a written statement admitting ownership of the gun. Officers DeBlanc and Vanderberry then allowed Mr. Monroe to dress himself and transported him to the police station. The United States subsequently filed the instant case, charging Mr. Monroe with the crime of knowingly possessing a firearm in violation

---

[2] Conflicting testimony was presented by the parties during the evidentiary hearing concerning whether all three occupants of the apartment were actually asleep at the time of the officers' entry. At least one police report indicates, however, that at least Mr. Monroe was asleep at that time, and it is reasonable to assume that the others were asleep as well. In any event, the question whether Ms. Brown and the child were sleeping is of no consequence to the Court's resolution of the motion to suppress.

[3] In *Miranda v. Arizona*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S.436, 444 (1966). A *Miranda* warning typically advises an arrestee that he has the right to remain silent, that his statements may be used against him in court, that he is entitled to an attorney and, if he cannot afford to retain a private attorney, to one provided by the state, that he may end an interrogation at any time and until such time as he is represented by an attorney, and that he cannot be interrogated unless he understands the foregoing rights.

of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Mr. Monroe now seeks to exclude from trial his oral and written confessions, on the ground that they were not voluntarily given.

At the suppression hearing held on May 9, 2006, both Mr. Monroe and Ms. Brown testified that, during Mr. Monroe's interrogation, an officer[4] stated to Mr. Monroe that, unless he signed the statement, his child would be taken into custody by Child Protective Services ("CPS").  Mr. Monroe further testified that several particulars of his statement were false and were made only because of the threat to his child.  Mr. Monroe called several witnesses whose testimony suggested that Officers DeBlanc and Vanderberry had used such a threat in a previous case to secure an incriminating statement from the subject of a search.  According to Mr. Monroe, he would not have signed the statement but for the threat of CPS intervention.  He cites the decision of the United States Supreme Court in *Lynumn v. Illinois*, 372 U.S. 528 (1963), for the proposition that such a statement by a police officer renders a subsequent confession involuntary, and thus inadmissible, as a matter of law.

Officers DeBlanc and Vanderberry testified that Vanderberry did mention calling CPS, but only after Mr. Monroe had already confessed orally to DeBlanc and begun to reduce that statement to writing.  The officers further testified that Officer Vanderberry did not make the CPS reference in a threatening or insinuating manner but, rather, that the issue arose in the context of an inquiry as to whether Ms. Brown would be arrested, in which case no adult would be available at the scene to look after the child.  According to the officers, he HPD's standard operating procedure requires an arresting officer either to call CPS or to transfer a child to the HPD's juvenile division under such circumstances.

---

[4] Mr. Monroe testified that the officer was Officer Vanderberry.  Ms. Brown was not able to identify the officer, whom she heard but did not see.

3

The *Lynumn* decision requires this Court to consider the totality of the circumstances in determining whether a confession is voluntary or coerced.  *Id.* at 534-35.  Here, the evidence tends to establish that Mr. Monroe was awakened in the middle of the night by a large group of officers who burst into the apartment wearing intimidating uniforms and brandishing weapons.  He was initially handcuffed and was questioned while clad only in his underclothes.  He had, at some time during the preceding twenty-four hours, used a mind-altering drug.  A reference was made in his presence to the possibility that his child would at least temporarily be taken into custody by CPS.

While the Court acknowledges that these circumstances were undeniably stressful for Mr. Monroe, it must also be noted that they are circumstances that are likely to occur during almost every execution of a no-knock warrant in a home where a child is present.  Moreover, it is most certainly in the best interest of such a child that police officers executing a search or arrest warrant consider whether the premises searched constitute a safe environment for the child.  To hold that police must refrain ever from mentioning their mandated cooperation with CPS in the presence of a criminal suspect would needlessly impair the effective administration of the state's protective processes and would disincentivize aggressive police action on behalf of at-risk children.  Conveying information about the availability of a safe environment for children could even be though to be reassuring rather than intimidating.

Although the Court found Mr. Monroe and Ms. Brown to be credible witnesses, their testimony did not establish, by a preponderance of the evidence, that Officer Vanderberry's reference to CPS was made in such a manner or at such a time as to render Mr. Monroe's oral and written confessions involuntary as a matter of law.  The

4

circumstances under which Mr. Monroe confessed are meaningfully distinguishable from those present in *Lynumn*, in which three arresting officers admitted that they had advised the suspect that, unless she said what they wanted her to say, they would ensure that her children, whose father was deceased, would be taken away and given to strangers and that she would never see the children again. *See id.* at 531-32. Accordingly, Mr. Monroe's motion to exclude the statements from the evidence admitted at trial is hereby **DENIED**.

    **IT IS SO ORDERED**.

    **SIGNED** at Houston, Texas, on this the 10th day of May, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**